```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x
RICHARD MASSIE,
                                :
                Plaintiff,          REPORT & RECOMMENDATION
                                :
        -against-                   06 Civ. 12905 (JSR)(MHD)
                                :
METROPOLITAN MUSEUM OF ART,
                                :
                Defendant.
-------------------------------x
```

TO THE HONORABLE JED S. RAKOFF, U.S.D.J.:

Pro se plaintiff Richard Massie filed this lawsuit against his employer, the Metropolitan Museum of Art ("the Museum"), asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Defendant has moved to dismiss the complaint for failure to satisfy the pleading standards of Rule 8 of the Federal Rules of Civil Procedure. Alternatively, defendant seeks dismissal of those portions of the complaint that are time-barred because they are not within the scope of plaintiff's most recent administrative complaint.

The Complaint

Plaintiff's complaint consists of the standard form provided by the court to pro se litigants seeking to sue their employer for discriminatory conduct. In addition to filling out portions of the form, plaintiff has appended twenty-four pages of handwritten notes

1

and other documents, apparently to explain the factual basis for his lawsuit.

In the pre-printed portion of the complaint, which is legible, plaintiff specifies Title VII as the legal basis for his suit, and identifies the following categories of discriminatory conduct of which he accuses the Museum: "termination", "unequal terms and conditions of employment", "retaliation" and "[o]ther acts". (Compl. at 1, 3.) He further states that the discrimination was based on his race ("African American") and color ("black"). He also reports that he filed charges with the New York State Division on Human Rights ("SDHR") in June 2004, February 2006 and April 2006, and that he filed a charge with the Equal Employment Opportunity Commission ("EEOC") on October 7, 2006. (Id. at 4.)

As for the specifics of his claims, we must look to the handwritten pages appended to the form complaint and the documents that he also annexed to his pleading. Even though the complaint must be read liberally in view of plaintiff's status as an untutored pro se litigant and may not be held to a rigorous standard of descriptive precision, e.g., McEachin v. McGuinnis, 360 F.3d 197, 200-201 (2d Cir. 2004), these pages are difficult both to decipher and to understand. It appears that plaintiff, who has been employed as a security guard at the Museum, is complaining about

2

mistreatment by fellow workers and supervisors at the Museum over the years, starting as early as 2001. The plaintiff mentions some disciplinary actions taken against him, which we infer he views as unjustified, and refers as well to conversations that he may have overheard in which co-workers or supervisors have either mocked or criticized him for perceived eccentricities or disclosed the fact that he has undergone psychiatric examination and medical treatment. Plaintiff also makes reference to his having been terminated for being off post at some time in 2006. As for why any of the actions that he refers to were in violation of Title VII, plaintiff does not say specifically, but we infer, based on the form portion of the complaint, that he is asserting that he was so treated because he is African American.[1]

Defendant's Motion

The Museum has moved to dismiss the complaint because, contrary to the requirement of Rule 8, the pleading does not contain "a short and plain statement" of plaintiff's claims, and instead rambles on at some length and somewhat incoherently about plaintiff's perceived travails at his workplace. Alternatively,

---

[1] Because of plaintiff's pro se status, we also have examined his motion papers for possible clarification of his claims. E.g., Johnson v. Wright, 234 F. Supp. 2d 352, 356 (S.D.N.Y. 2002). Unfortunately, those papers are no more enlightening in that regard than his complaint.

defendant notes that plaintiff is referring to a series of events commencing in 2001, and it asks that any claims asserted by him be limited to those included in an agency complaint that was subject to final agency action no more than ninety days before the filing of this lawsuit. This would limit plaintiff's claims to the allegations that he made in his most recent administrative complaint, dated April 10, 2006.

In defendant's motion papers it proffers as exhibits a series of three complaints that plaintiff filed against it with the SDHR since June 2004, as well as the disposition of those charges both by the SDHR and by the EEOC. (Affirmation of Allan S. Bloom, Esq., executed Feb. 15, 2007, Exs. B, C, H, I, J, M, O & P.) These charges provide a far clearer statement of plaintiff's grievances and the circumstances that may have given rise to them.

In Massie's June 30, 2004 dual SDHR charge he complained of events spanning the period from September 2001 to June 2004, and asserted that they reflected racial and disability discrimination against him by the Museum. (Id., Ex. B.) He stated that in September 2001 the Museum had forced him to take an involuntary leave and undergo psychological testing. His unpaid leave lasted until March 12, 2002, and he complained that he had been labeled "a security threat and security risk". He also alleged that, on his

4

return, a Museum manager of Hispanic origin named Rivero and a supervisor named Sheila Wallace had referred to him as "crazy". (Id., Ex. B at ¶ 3.)

The agency complaint went on to state that Rivero and the Museum's Associate Security Manager, Steven Mandela, had terminated Massie's employment on May 23, 2003 because he had "not renewed [his] state license", but that after he had filed a grievance, the Museum reinstated him on November 21, 2003. (Id., Ex. B at ¶ 4.) Massie also alleged that on January 24, 2004 Rivero had told another employee that he liked to annoy plaintiff, and that plaintiff was undergoing a variety of medical tests and treatment. (Id., Ex. B at ¶ 5.)

In response to this charge the SDHR issued a determination of no probable cause on December 29, 2004. (Id., Ex. C.) It found that Massie's medical leave had been requested by his own union and that he had been reinstated when the leave ended. It further found that plaintiff had been terminated because his state license, which permitted him to work as a security guard, had expired and because of poor work performance by him. It also observed that Massie had later been reinstated based on the recommendation of the Museum's internal grievance committee but that he had been suspended for six months because he had allowed his license to lapse and had worked

5

ten months without a valid license despite a prior warning about allowing his license to expire. (Id., Ex. C at 1-2.)

The SDHR also found that, in the wake of comments by plaintiff's manager, Mr. Rivero, about plaintiff's medical condition, a Senior Manager at the Museum had instructed Rivero to refrain from any such comments in the future. The SDHR further noted that plaintiff had admitted that since that warning, on June 6, 2004, Rivero had not repeated such statements. (Id.)

Finally, the SDHR took note that approximately twenty-five percent of the security guards at the Museum were Black, and that plaintiff continued to be employed by the Museum after his reinstatement. (Id., Ex. C at 2.)

Plaintiff filed a second dual complaint with the SDHR on February 15, 2006. (Id., Ex. H). In this charge Massie alleged that Rivero had mentioned his medical condition to another security guard in February 2005. He also referred to an alleged conversation (in which he did not participate) in which Rivero had disclosed plaintiff's "medical diagnoses" to Wallace and had also told her that plaintiff was having trouble with her and with the "Supervisor

of Security", named Ortega.[2] (Id., Ex. H at ¶ 2.)

Massie also alleged that Rivero had told Mandela, the Manager of Security, in March 2005 that Ortega, the Supervisor of Security, was "trying to get back at Massie." Plaintiff further claimed that in May 2005 Ortega had told another security guard that he had talked to Wallace about Massie's medical diagnoses and that he was going to try to get Massie "sick or fired". (Id., Ex. H at ¶¶ 3-4.)

The balance of plaintiff's second SDHR complaint refers principally to other statements allegedly made by Ortega about Massie. Thus plaintiff asserted (1) that Ortega had said to another guard in June 2005 that Massie took medications, (2) that in July 2005 Ortega had said to himself that he wanted to have someone "'F—' me up",[3] (3) that in August 2005 he had told several other Museum employees that he wanted to harm plaintiff, assertedly because plaintiff had filed a prior agency complaint, and (4) in September 2005 he had told another guard that Massie "was 'a gay basher'". (Id., Ex. H at ¶¶ 5-8.) Finally, plaintiff alleged that in January 2006 he had heard Rivero laughing "that Mr. Ortega was trying to get back at me through customers of the Museum." (Id.,

---

[2] Plaintiff spells this individual's name alternatively as Ortego.

[3] Plaintiff claimed that he had overheard Ortega making this statement to himself. (Id., Ex. H at ¶ 6.)

7

Ex. H at ¶ 9.)

On March 17, 2006 the SDHR issued an order dismissing this complaint. The basis for the dismissal was plaintiff's filing of a lawsuit against the Museum in state court prior to his filing of the SDHR complaint. As noted by the SDHR, that court filing amounted to an election of remedies and divested the agency of jurisdiction over plaintiff's complaint. (Id., Ex. I.)[4]

From defendant's submissions, it appears that EEOC dismissed the same set of charges. The one document in the record pertinent to this filing is an EEOC notice to the parties dated May 2, 2006 stating that it was dismissing the charge because plaintiff had previously filed a lawsuit in state court. (Id., Ex. J.) That notice also specified that if plaintiff wished to pursue the matter he would have to file suit within ninety days after receipt of the notice. (Id., Ex. J.)

---

[4] Defendant includes as an exhibit to its motion a copy of a complaint that plaintiff filed in the New York State Supreme Court on December 2, 2005, which contains allegations that appear largely to parallel the charges found in his February 15, 2006 agency complaint. (Id., Ex. F.)

Defendant also proffers a Notice of Claim and Summons dated March 21, 2006 which plaintiff filed in the Small Claims part of Civil Court in the Bronx, also against the Museum. The form, however, does not legibly indicate the nature of plaintiff's grievance in that case. (Id., Ex. G.)

Finally, plaintiff filed a third SDHR complaint on April 10, 2006. (Id., Ex. M.) He alleged that on April 5, 2006 he had attended a hearing at which a Museum manager and a union representative were also present. According to plaintiff, the manager left the hearing to speak to Rivero, the previously mentioned supervisor, and then returned to the hearing and fired plaintiff. Massie asserted that the manager had taken this action at Rivero's direction, to retaliate against plaintiff for filing the February 15, 2006 SDHR complaint. (Id., Ex. M at ¶¶ 1-2.)

On May 25, 2006, the SDHR issued a determination finding no probable cause for this complaint. In so concluding the SDHR noted that plaintiff had initially been terminated for leaving his post without notifying either his supervisor or the Museum's command center. The agency further noted that plaintiff had previously been disciplined for unexcused absences, that he had been placed on probation and that he had also been suspended for poor performance. (Id., Ex. O at 1.)

The SDHR also found that, in the wake of plaintiff's termination, he had been given a grievance hearing on April 11, 2006, and that the Museum had agreed at that time to reinstate him based on his admission that he had left his post without notice and his request that he be given another chance. (Id.)

9

Finally, the agency decision noted that the Museum had decided to reinstate plaintiff before receiving notice of plaintiff's complaint to the SDHR. As the agency stated, reinstatement was agreed to on April 11, and the SDHR notice of the complaint was not mailed to the Museum until that same day. (Id.)

On July 24, 2006 the EEOC issued a notice to plaintiff that it was adopting the findings of the SDHR and advised him of his right to sue. The notice stated that suit under Title VII must be filed within ninety days of his receipt of the notice. (Id., Ex. P).

Plaintiff submitted his current complaint to the Pro Se Clerk of this court on October 13, 2006. It was filed with the Clerk of the Court on November 3, 2006.

ANALYSIS

As noted, defendant seeks two alternative forms of relief, either outright dismissal of the complaint for failure to meet the pleading standard of Rule 8 or dismissal of any claims that plaintiff has not administratively exhausted and timely presented to this court. We first address the Rule 8 prong of the motion.

A. Rule 8 Dismissal

Defendant seeks dismissal of the entire complaint because the pleading itself is a largely incoherent ramble from which it is difficult, if not impossible, to extract what plaintiff means to say. As the Second Circuit has recognized, the district court has the power, on motion or sua sponte, to dismiss the complaint, or portions of it, if it is "so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988); see also Wynder v. McMahon, 360 F.3d 73, 79 (2d Cir. 2004)( "[t]he key to Rule 8(a)'s requirement is whether adequate notice is given"); Kittay v. Kornstein, 230 F.3d 531, 541 (2d Cir. 2000). Such notice must suffice to "enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial." Wynder, 360 F.3d at 79 (quoting Simmons v. Abruzzo 49 F.3d 83, 86 (2d Cir. 1995)).

Were we restricted solely to the face of the complaint, there would be little basis to resist the argument for dismissal, albeit with leave to re-plead, since we have repeatedly been reminded by the Second Circuit that dismissals of pleadings, particularly those authored by untutored pro se litigants, should generally be done at

11

least once without prejudice to amendment, on the assumption that the plaintiff may be able to correct the deficiencies of his original handiwork. See, e.g., Simmons, 49 F.3d at 86-87. Nonetheless, in this case, the full record placed before us by the defendant counsels in favor of a somewhat different approach. See id. at 88 ("In light of defendants' demonstrated ability to understand Simmons's claims...the dismissal with prejudice for failure to comply with Rule 8 was an abuse of discretion.").

As noted, plaintiff filed a series of SDHR complaints that, even though found by the agency to be meritless or jurisdictionally barred, set forth a set of allegations and claims in relatively clear and coherent terms. Given this record it would be far simpler and more efficient at this stage for us to eschew a Rule 8 dismissal, and instead deem the current complaint to embody the same allegations as plaintiff made in his three agency complaints.

This approach is preferable for several reasons. First, the pleading does list these three SDHR complaints, and seems to refer as well to the allegations found in those agency charges. Hence it is not unreasonable to infer that plaintiff is seeking to assert those claims in federal court. Second, since plaintiff is pursuing a Title VII lawsuit, he is limited in any event to those claims that he has pursued before the appropriate administrative agencies

and reasonably related additional claims. See, e.g., Butts v. New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401-03 (2d Cir. 1993). Hence, even if he were seeking now to mention new grievances, those additional claims would presumably fail for lack of exhaustion. Id. Third, this approach avoids the necessity of a second round of pleading, with the likelihood that plaintiff would be able to produce only a similarly obscure complaint, thus leading to another Rule 8 motion, with attendant delay in determining whether plaintiff has any potentially viable claim. Fourth, to the extent that the pleading, if construed as we propose, may contain claims that are subject to dismissal for non-Rule 8 reasons, defendant has already formulated a set of arguments on its current motion that are directed to trimming the scope of the complaint based on the evident failure of plaintiff to pursue some of those claims in a timely fashion. Fifth, if any claims survive this proposed analytical process, in view of the new clarity of the pleading as we read it, defendant will be able subsequently to formulate and assert any other defenses that may be appropriate.

For these reasons, we conclude that the complaint, as pled, should not be dismissed under Rule 8. Instead it should be deemed to embody the allegations and claims contained in the three SDHR complaints that plaintiff has filed and that the SDHR has dismissed. See, e.g., Fed. R. Civ. P. 8(f)("All pleadings shall be

so construed as to do substantial justice."). See also Phillips v. Girdich, 408 F.3d 124, 128 (2d Cir. 2005).[5]

B. Timeliness

The complaint, as we have read it, embodies allegations and claims made in three agency complaints, which the SDHR disposed of, respectively, in December 2004, March 2006 and May 2006. The record does not reflect whether the EEOC ever issued a right-to-sue notice with regard to the first charge, but it issued such notices for the second and third complaints on May 2, 2006 and July 24, 2006, respectively.

Under the terms of Title VII a plaintiff must ordinarily first present his claims to the EEOC before asserting them in court, and must do so, at least in New York, by a filing with the Commission or with the SDHR, acting for the EEOC, within 300 days after the alleged act of discrimination. 42 U.S.C. § 2000e-5(e)(1). See, e.g., Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d

---

[5] We note that plaintiff mentions in passing an EEOC charge that he assertedly filed in October 2007. (Compl. at p.4). He does not allege, however, that he ever received a right-to-sue notice from the EEOC in response to this complaint -- an event unlikely to have occurred before he filed his lawsuit on November 3, 2006 -- and defendant represents that it never received a copy of the alleged charge. (Def.'s Mem. of Law at 5). Under the circumstances, we deem the current complaint not to be based on this unidentified document.

14

74, 80-81 (2d Cir. 2003). In addition, the plaintiff must file his lawsuit within ninety days after receipt of a right-to-sue notice from the EEOC. 42 U.S.C. § 2000e-5(f)(1). See, e.g., Baldwin County Welcome Center v. Brown, 466 U.S. 147, 149-50 (1984).

Based on these requirements, it is evident that any allegations or claims asserted by plaintiff that may be based on his first two SDHR complaints must be dismissed. Plaintiff filed the first agency complaint in June 2004 and the SDHR found no probable cause in December 2004. There is no indication whether the EEOC ever issued a right-to-sue notice to plaintiff, but we infer that if it did so, that was long before this lawsuit was filed; indeed, plaintiff's current complaint cites, as the only pertinent EEOC notice, the one issued on July 24, 2006, which is the right-to-sue notice issued in response to plaintiff's third SDHR complaint. Thus we conclude that any claims asserted only in the 2004 complaint are barred by the ninety-day deadline for plaintiff to file suit.

The second SDHR complaint led to a May 2, 2006 right-to-sue notice from the EEOC. To the extent that the current lawsuit may encompass allegations and claims from the second SDHR complaint, they too are not timely asserted here. The EEOC notice was presumptively sent to plaintiff on May 2, 2006, which was 185 days

15

before he filed suit on November 3, 2006.[6] Since we have no reason to believe that it took 95 days for the EEOC notice to reach its addressee, the complaint filed in this court was too late to preserve those earlier claims.[7] We also note, again, that plaintiff in his current pleading refers only to the July 24, 2006 EEOC right-to-sue notice, thus indicating that he is not contending that the May 2, 2006 notice provides a basis here for any of his claims.

There remain for consideration only the allegations and claims that plaintiff asserted in his last SDHR complaint, pertaining to his termination and subsequent reinstatement by the Museum in April 2006. Since the EEOC issued a right-to-sue notice on that complaint

---

[6] The date of filing for a pro se plaintiff who is granted in forma pauperis status is the day on which his pleading is received by the Pro Se Clerk of this court, see Toliver v. Sullivan, 841 F.2d 41, 42 (2d Cir. 1988) -- in this case October 13, 2005 -- but that rule does not apply to a plaintiff who did not receive such status. See, e.g., Celestine v. Cold Crest Care Center, 495 F. Supp.2d 428, 431-32 (S.D.N.Y. 2007). In this case plaintiff paid the filing fee (Dkt. Sheet – entry 1), and hence commencement of the lawsuit dates from November 3, 2007. The difference between these two dates makes no difference to the outcome here, and hence we need not address whether the three-week delay between the receipt of the complaint by the Pro Se Clerk and its filing with the Clerk of the Court would justify equitable tolling. See generally id. at 432-35.

[7] We note that the second SDHR complaint was dismissed by the state agency for lack of jurisdiction based on plaintiff's election of remedies, reflected in his decision to file a lawsuit in state court before filing with the SDHR. We need not address the effect of that determination, adopted as well by the EEOC, on plaintiff's ability to pursue federal-court litigation of the claims embodied in the dismissed SDHR complaint.

16

on July 24, 2006, there is no question that the complaint, insofar as it challenges the alleged actions of the Museum in April 2006, is timely.

## CONCLUSION

For the reasons noted, we recommend that defendant's motion to dismiss be granted only to the extent of dismissing all claims other than those arising from the alleged actions of the Museum that led to plaintiff's termination and reinstatement in April 2006. Butts, 990 F.2d at 1401-03. In all other respects the motion to dismiss should be denied.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Jed S. Rakoff, Room 1340, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e); Thomas v. Arn, 470 U.S. 140, 150-52 (1985); Small v.

17

<u>Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989).

Dated: New York, New York
       September 17, 2007

**MICHAEL H. DOLINGER**
**UNITED STATES MAGISTRATE JUDGE**

Copies of the foregoing Report and Recommendation have been mailed today to:

Mr. Richard Massie
120 Aldrich Street
Apt. 12H
Bronx, New York 10475

Allan S. Bloom, Esq.
Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, New York 10022