UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

RICHARD MASSIE,

                        Plaintiff,          :          **REPORT & RECOMMENDATION**

                                            :

        -against-                                      06 Civ. 12905 (JSR)(MHD)

                                            :

METROPOLITAN MUSEUM OF ART,

                        Defendant.          :

------------------------------------x

TO THE HONORABLE JED S. RAKOFF, U.S.D.J.:

        Plaintiff Richard Massie, appearing pro se, commenced this
Title VII lawsuit against his employer, the Metropolitan Museum of
Art, alleging race discrimination and retaliation in connection
with a host of employment actions by the Museum. By Order dated
December 5, 2007, the court granted in part defendant's motion to
dismiss, leaving in place only plaintiff's claim for lost pay and
other relief based on his brief termination by defendant in April
2006.

        On September 5, 2008, the parties agreed to settle the case
and appeared before this court to put their settlement agreement on
the record. At the conference, plaintiff agreed to dismiss the
lawsuit with prejudice in exchange for payment of the entire amount
of wages that he claimed to have lost by virtue of his short-lived

1

dismissal -- ten days of straight-time pay plus three hours of overtime pay, to be calculated at plaintiff's April 2006 rate of pay. Within three days, plaintiff changed his mind and notified the court that he wanted to revoke his agreement to the settlement. (See letter to the court from Richard Massie, dated Sept. 8, 2008). A few days later, on September 11, 2008, defendant complied with its obligations under that settlement agreement by delivering the settlement check to plaintiff. (See letter to the court from Allan S. Bloom, Esq., dated Sept. 15, 2008). After receiving the settlement check, plaintiff returned it to the Museum and again wrote to the court, seeking reconsideration of that agreement. (See id.; letter to the court from Richard Massie, dated Sept. 12, 2008).

Defendants have moved to enforce the settlement agreement. Plaintiff, now represented by counsel, has opposed. For the reasons that follow, we recommend that defendant's motion to enforce the settlement be denied.

A. Statement of the Case

1. The Pertinent Facts

Plaintiff is a Security Officer employed with the Metropolitan

2

Museum of Art. He received a Bachelor of Arts degree from the City College of New York in Art and Advertising, and prior to working at the museum, had acquired some modest employment experience. (See Allan Bloom, Esq. Affirmation in Support of Def.'s Application to Enforce the Settlement, executed Oct. 17, 2008 ("Bloom Affirmation 2") Ex. C).

Plaintiff suffers from a mental illness, which the defendant has identified in earlier motion papers as "paranoid schizophrenia". (See Def.'s Mem. in Supp. of Mot. to Dismiss the Compl. 2). Moreover, the record reflects that from October 27, 2001 to March 12, 2002, plaintiff went out on an involuntary medical leave of absence after having been required by defendant to undergo psychological testing. (See Allan Bloom, Esq. Affirmation in Supp. of Def.'S Mot. to Dismiss the Compl., executed Feb. 15, 2007 ("Bloom Affirmation 1") Ex. B at 1). After the medical leave ended, he returned to the same position he had held prior to the leave. (Id. Ex. C at 1).

On April 5, 2006, defendant discharged plaintiff for abandoning his post. (Id. Ex. K). At an April 11, 2006 grievance hearing on the discharge plaintiff admitted to abandoning his post, and defendant agreed to reinstate him, reducing his discipline to a ten-day unpaid suspension. (Id. Ex. L).

3

Plaintiff filed the complaint in this action in November 2006, alleging race discrimination and retaliation based on a series of incidents that culminated in his 2006 termination. On defendant's motion to dismiss, the District Court dismissed all claims other than those concerning the April 2006 discharge. (See Order dated Dec. 5, 2007).

## 2. The Settlement Events

On September 5, 2008, the parties convened on the ninth floor of the Courthouse for plaintiff's deposition. (Bloom Affirmation 2 ¶ 1). At his deposition, plaintiff testified that he had lost only ten days of pay and the opportunity to work overtime -- which he estimated as a loss of three hours -- as a result of his April 2006 discharge and reinstatement. (See id., Ex. A at 102, 111). During a break from the deposition, the Museum's counsel offered, on behalf of his client, to pay plaintiff the entire amount of the lost pay that he claimed to have suffered as a result of the termination and reinstatement -- ten days of straight-time pay plus three hours of overtime pay -- calculated at plaintiff's April 2006 rate of pay. (Id. at ¶ 4). Plaintiff agreed. (Id.).

Approximately thirty minutes after reaching this agreement,

4

the parties contacted the court to put their agreement on the record, and we convened a brief settlement conference with a court reporter in attendance. (Id. at ¶¶ 5, 6). The court asked defendant's attorney to explain the terms of the agreement that the parties had reached. (See Tr. 2-3). Counsel responded that defendant would pay plaintiff his lost wages, which would be calculated at his April 2006 rate of pay. When asked by the court, however, the attorney was unable to specify the total that would be paid. (Id.). In exchange, plaintiff would agree to the dismissal of the case with prejudice. Defendant also required that there be an agreement on both sides not to discuss the specific terms of the settlement with anyone else. (Id. at 3). In response to a question from the court about whether the agreement would be memorialized in writing, counsel stated that the defendant believed there was no need for a writing if the parties put the agreement on the record and affirmed it. (Id. at 3-4).

When asked by the court, plaintiff agreed to the terms of settlement. In doing so, he observed that he had believed that he had additional claims in the case but that since that was apparently not true, he was willing to agree to the proposed payment. (Id. at 4). At no time did he raise any objection or insist that the agreement be in writing. When asked whether he was prepared to "say yes on this deal," plaintiff responded, "Yes."

5

(Id. at 5). We remarked at the "clarity of both sides' agreement to those terms" and stated that "the case can be concluded on this basis." (Id.). We then asked that counsel confirm in writing that payment had been made to plaintiff, at which point we would report to the District Court that the settlement had been accomplished. (Id.).

Several days later, plaintiff sent correspondence to the court indicating that, having consulted an attorney, he wanted to "seek reconsideration" of the agreement and apologized for making a "regrettable agreement." (See Massie Sept. 8, 2008 letter). On September 11, defendant delivered a check to plaintiff in the amount of $673.52 -- representing net pay for the ten days and three hours of overtime. (See Letter to Richard Massie from Cindy Caplan, Esq., dated Sept. 11, 2008). That same day, in compliance with the court's directive issued at the September 5 conference, defendant informed the court by letter that it had delivered the settlement payment to plaintiff and requested that the case be dismissed with prejudice. (See Letter to court from Allan Bloom, Esq, dated Sept. 11, 2008). Plaintiff apparently did not cash or deposit the check, but rather returned it to defendant's attorney. (See Bloom Sept. 15, 2008 letter).

Upon learning of plaintiff's intention to rescind the parties'

6

settlement agreement, defendant wrote to the court and requested that it enforce the settlement. (Id.). The court deemed defendant's letter to be an application to enforce the settlement, and set September 23, 2008 as the deadline for plaintiff to file and serve a response. (See Order dated Sept. 15, 2008). Plaintiff informed the court that he had retained counsel, and requested "an extension to put immediate lawyer up to speed with the court to prepare for defenses." (See letter to the court from Richard Massie, dated Sept. 16, 2008). Plaintiff's counsel, Stewart Karlin, Esq. entered his notice of appearance on October 3, 2008 and ultimately filed a memorandum in opposition on October 14, 2008; defendant filed a reply on October 17, 2008.

Plaintiff argues that the defendant's motion to enforce the settlement should be denied because his consent was not knowing and voluntary. In support of this contention he asserts that: (1) he does not have business experience, (2) he did not have access to the agreement and had no time to consider it, (3) he was intimidated by the trappings of the court, (4) he thought that he would have a grace period in which to change his mind, (5) he did not release the defendant from his Title VII claims, (6) he was given only nominal consideration for his agreement and (7) he was not encouraged to seek the advice of an attorney. (See Pl.'s Mem. 4).

7

Defendant requests that the court enforce the settlement and that the lawsuit be dismissed with prejudice. (See Def.'s Reply Mem. 8). The Museum argues that although plaintiff was pro se at the time, he "knowingly entered into a voluntary, clear, explicit, and unqualified agreement" to settle the lawsuit on September 5, 2008, that defendant complied with all of its obligations under that settlement agreement by delivering a check to plaintiff on September 11, 2008, and that plaintiff's "change of heart" is not a valid reason to rescind that agreement. (Id. at 1, 4). Furthermore, defendant asserts that plaintiff agreed to the terms of the settlement with full knowledge that it would not be reduced to writing. (Id. at 6). Defendant denies that plaintiff was subjected to any coercion during the proceeding, pointing to the fact that defendant agreed to make plaintiff whole for all money damages that he claimed to have suffered. (Id. at 7). Lastly, defendant argues that plaintiff had an adequate opportunity to contemplate the terms on which he might settle, since two and one-half years had passed since his discharge and reinstatement. (Id.).

B.   Legal Standards

Defendants correctly note that, as a general rule, oral settlement agreements entered into by the parties before the court are valid and enforceable. See Powell v. Omnicom, 497 F.3d 124, 129

8

(2d Cir. 2007) (noting a "voluntary, clear, explicit, and unqualified stipulation of dismissal entered into by the parties in court and on the record is enforceable even if the agreement is never reduced to writing, signed, or filed"). Nonetheless, there are circumstances in which the court may find an oral agreement unenforceable or may prefer to exercise its discretion to release a party from such an agreement.

The Second Circuit has left open the question of whether state or federal law controls the enforceability of oral settlement agreements, whether in federal-question or diversity cases. See, e.g., Monaghan v. SZS 33 Assocs., L.P., 73 F.3d 1276, 1283 n.3 (2d Cir. 1996), aff'd, 73 F.3d 1276 (2d Cir. 1996) ("We assume, without deciding, that New York law provides the rule of decision for determining the validity of the oral settlement agreement."). Nonetheless, federal courts in the Second Circuit regularly apply New York law, observing that there is no meaningful substantive difference between federal and New York law with regard to enforceability. See, e.g., Ciamarella v. Readers' Digest Ass'n, Inc., 131 F.3d 320, 322 (2d Cir. 1997) ("[W]e find there is no material difference between the applicable state law or federal common law standard"); Monaghan, 73 F.3d at 1283 ("[T]he federal rule regarding oral stipulations does not differ significantly from the New York rule"); see also Willgerodt ex. rel. v. Hohri, 953

9

F.Supp. 557, 560 n.1 (S.D.N.Y. 1997).

In determining whether oral agreements are enforceable in the absence of a fully executed document, the courts are guided by the intent of the parties, as demonstrated by their "words and deeds". Winston v. Mediafare Ent'mt Corp., 777 F.2d 78, 80 (2d Cir. 1986). In Winston, the Second Circuit specified four factors that should guide the court's inquiry into whether the parties intended to be bound by the oral agreement at issue:

> (1) whether there has been express reservation of the right not to be bound in the absence of writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and, (4) whether the agreement at issue is the type of contract that is usually committed to writing.

Id.. No single factor is dispositive; rather, all four factors should be considered for their bearing on the parties' intent in the context of the entire case. See, e.g., Lindner v. Am. Express Corp., 2007 WL 1623119, at *4 (S.D.N.Y. June 5, 2007).

C.  Analysis

We address the Winston factors seriatim. In doing so, we exercise caution, however, in view of both plaintiff's pro se status

and his apparent psychiatric history.

We note, in this regard, that the Second Circuit, as a general matter, is solicitous of pro se litigants, enforcing standards of procedural leniency rather than holding them to the rigidities of federal practice. See, e.g., Weixel v. Bd. of Educ., 287 F.3d 138, 141-42 (2d Cir. 2002) (reversing dismissal where district court failed to construe pro se plaintiffs' complaint liberally); Ortiz v. Cornetta, 867 F.2d 146, 148 (2d Cir. 1989) ("[o]nce a pro se litigant has done everything possible to bring his action, he should not be penalized by strict rules which might otherwise apply if he were represented by counsel"). Thus, this Circuit construes pro se submissions "liberally, applying a more flexible standard." Taylor v. Vermont Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002). Moreover, in the settlement context, depending on the degree of the pro se litigant's sophistication, his understanding of the process and his appreciation of the significance of his agreeing to terms of settlement may be less acute than that of a represented party, a consideration that, for reasons discussed below, becomes relevant at certain points of the analysis.

Furthermore, we apply the Winston factors with caution in light of plaintiff's mental-health status. As noted, plaintiff went on an involuntary medical leave of absence in 2001 occasioned by mental

11

illness after having been forced to undergo psychological testing by defendant. (Bloom Affirmation 1 Ex. B). Although neither party has raised the issue of plaintiff's mental-health capacity in litigating the enforceability of the settlement agreement, we note the erratic and sometimes incoherent nature of plaintiff's direct correspondence with the court. See Ferrelli v. River Manor Health Care Ctr., 323 F.3d 196, 201 (2d Cir. 2003) (recognizing that district court judges may make a sua sponte inquiry into a pro se plaintiff's mental competence, but holding that they are under no obligation to do so, even when a judge observes behavior that may suggest mental incapacity). These letters at least suggest problems in cognitive processing.[1] Moreover, plaintiff has initiated other proceedings against defendant in state court that are similarly incomprehensible, suggesting a pattern of mental disturbance.[2]

---

[1] For example, in the letter in which he apologizes to the court for making a "regrettable agreement" plaintiff lists several incoherent explanations, such as "Your [sic] around alot [sic] of rich people!" and "Your [sic] on the Titanic!!". Although asserting Title VII claims in the action, plaintiff judges the case to be one of "misrepresentation & slander" and a violation of "privileged information." (Massie Sept. 9, 2008 letter).

[2] For example, in one complaint plaintiff concludes, "Labor Law 241 absolute liability on employer due to the absence of worker's compensation. CPLR 5201, debt subject to enforcement proper garnishee. . . . [F]raud and negligence though a series of tort laws were violated as it defines industrial racism. . . . [D]efendant has breached the contract. Not only is this a defamation of character, hostile work environment claim, but it is well constructed as a form of self defense. . . . [P]laintiff seeks action against Lenox Hill Hospital for violation of Hippa, and Misrepresentation and slander. . . . [P]laintiff demands

While the transcript from the settlement conference does not reflect irrational behavior by plaintiff, his correspondence to the court, both prior to and in the wake of, the settlement proceeding, as well as his history of mental illness raise concerns. Although we are not adjudging him to be incompetent, we recognize that defendant's mental state and <u>pro</u> <u>se</u> status must inform our application of the <u>Winston</u> factors.

## 1. Express Reservations

The first requirement concerns whether the parties intended to consent to a binding agreement without a writing. The court must determine whether there are "indications in the proposed settlement agreement that the parties did not intend to bind themselves." <u>Ciaramella</u>, 131 F.3d at 324. Considerable weight is accorded to such statements, as courts should avoid frustrating the clearly-expressed intentions of the parties. <u>See</u> <u>R.G. Group, Inc. v. Horn & Hardart Co.</u>, 751 F.2d 69, 75 (2d Cir. 1984).

Plaintiff's counsel argues that the settlement should not be enforced because plaintiff thought that a formal written agreement would follow. (Pl.'s Mem. 4). As noted, we treat this consideration

---

judgment . . . in lost backwages [and] permanent physical injury." (<u>See</u> Bloom Affirmation 1 Ex. F).

13

with some caution since plaintiff was pro se at the time of the settlement negotiations on September 5, 2008. However, defendant's counsel unequivocally stated on the record at the time that he did not intend to reduce the agreement to writing if the parties affirmed the terms of the settlement on the record. (Tr. 4). At no time during the conference did plaintiff request that the agreement be put in writing. Moreover, in spite of the fact that the defendant's attorney had just said that there would not be a written agreement, when asked whether he was prepared to "say yes on the deal," plaintiff replied, "Yes". (Id. at 5); see McKenna v. Ward, 1997 WL 66779, at *7 (S.D.N.Y. Feb. 18, 1997) (holding that plaintiff did not establish undue influence since she had stated that she entered into the agreement of her own free will and did not raise objections to the settlement despite opportunities to do so).

Plaintiff also contends that during the proceeding, a union attorney and defense counsel "had me under the impression I had to sign something." (See Massie Sept. 12, 2008 letter). However, we find no evidence that plaintiff agreed to the settlement, whether oral or otherwise, under duress. See Kamerman v. Steinberg, 891 F.2d 424, 431 (2d Cir. 1989) (holding that to show duress, plaintiff must demonstrate that an unlawful threat was made that caused her involuntarily to accept a contract because the circumstances permitted no alternative). In this case, the outcome of apparently

brief settlement negotiations, was confirmed by a magistrate judge in open court, and there is no indication that coercive tactics were used.

Moreover, plaintiff never indicated on the record that he felt threatened or coerced during the negotiations. See Jackson v. Heidelberg L.L.C., 296 Fed. Appx. 102, 102 (2d Cir. 2008) (holding settlement agreement reached in open court was enforceable even though plaintiff was pro se). Nor does it appear that plaintiff failed to raise objections because he was confused, under shock or time pressure to settle, or "intimidated by the trappings of the Court." (Pl.'s Mem. 4). Although the time between the settlement negotiations and the in-court settlement hearing was brief -- roughly thirty minutes -- plaintiff still had the opportunity to change his position. See Powell, 497 F.3d at 132 (holding oral settlement agreement enforceable where plaintiff had nearly two years between her termination and settlement negotiations, even though only a few hours had elapsed between the beginning of settlement negotiations and plaintiff's assent to those terms in open court). Furthermore, although plaintiff did not seek the advice of an attorney prior to the settlement negotiations, he could have asked to do so.

As we have noted, apart from plaintiff's status as an untutored

pro se litigant, he has manifested signs of mental confusion at various times during the lawsuit and prior to it. His newly appointed attorney, however, has not invoked that condition on this motion, and we observed no signs of confusion at the settlement hearing. Thus, despite our hesitancy to assume too readily that plaintiff had not knowingly agreed to an oral settlement, we have no compelling evidence to find otherwise. See Willgerodt, 953 F.Supp. at 560 (rejecting defendant's effort to rescind settlement agreement because of an absence of evidence as to how "a combination of mental fatigue, depression, confusion, fear and intimidation" and "depression caused her to lack contractual capacity or that her agreement was the result of impulsive or irrational behavior beyond her control."). Accord Blatt v. Manhattan Med. Group, P.C., 131 A.D.2d. 48, 51, 519 N.Y.S.2d 973, 975 (1st Dep't 1987) ("[I]f mere depression, serious or otherwise, can be considered a valid reason to avoid a contract . . . then the courts will be confronted with a plethora of claims by litigants declaring that they were too depressed or unhappy to know what they were doing and should, thus, be relieved, from the effects of their conduct.").

In sum, the first Winston factor militates, at least modestly, in favor of enforcing to the agreement here.

16

## 2. Partial Performance

The second <u>Winston</u> factor looks to whether one party has partially performed and whether that performance has been accepted by the party disclaiming the agreement. <u>R.G. Group</u>, 751 F.2d at 75; see also <u>Powell</u>, 497 F.3d at 130; <u>Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.</u>, 145 F.3d 543, 551 (2d Cir. 1998); <u>Kowalchuk v. Stroup</u>, 61 A.D.3d 118, 123, 873 N.Y.S.2d 43, 47 (1st Dep't 2009). We infer that the timing of performance may be significant, and that if one of the parties sought to repudiate the agreement before partial performance, the fact that the other side persisted in performing would have little weight. <u>E.g.</u>, <u>Lindner</u>, 2007 WL 1623119, *8. In this case, defendant delivered payment to plaintiff on or about September 11, 2008. Before that time, however, plaintiff had communicated with the court, seeking to disavow the agreement. Specifically, plaintiff wrote to the court indicating that he wanted to "seek reconsideration" of the agreement and apologized for making a "regrettable agreement." (Massie Sept. 8, 2008 letter). Moreover, it appears that he faxed a portion, if not all, of his September 8, 2008 letter to the defendant's counsel before defendant performed. (<u>Id.</u>). Then, on September 11, defendant delivered a check to plaintiff in the amount of $673.52, which is said to represent his net pay for three days of work plus three overtime hours. Plaintiff then apparently returned the check, uncashed, to defendant's

17

attorney since he was declining to proceed with the settlement agreement. (See Bloom Sept. 15, 2008 letter).

This sequence of events does not militate in favor of enforcing the settlement. Plaintiff sought promptly to repudiate the settlement agreement prior to payment on September 11, 2008 and he declined to accept defendant's performance. See, e.g., Lindner, 2007 WL 162119 at *8; Alvarez v. City of New York, 146 F.Supp.2d 327, 336 (S.D.N.Y. 2001).

3.  Existence of Open Terms

The third Winston factor looks to whether the parties agreed on all material terms. See Ciaramella, 131 F.3d at 325. The agreement in this case was a fairly basic one -- the dismissal of plaintiff's lawsuit with prejudice in exchange for ten days of straight-time pay plus three hours of overtime pay, calculated at plaintiff's April 2006 rate of pay, together with a provision that plaintiff would not discuss the specific terms of the settlement with anyone else. Defendant did not ask for a general release of claims or any of the other customary provisions in written settlement agreements, so there was nothing for plaintiff to consider beyond receiving pay in exchange for terminating the lawsuit and subsequent silence.

18

The one area of uncertainty, however, was the actual amount that plaintiff was to receive. As noted, defendant offered to pay him ten days of wages plus three hours of overtime, but the Museum's attorney was unable to quantify the amount at the settlement hearing. Moreover, although it was reasonable to infer that the payment would reflect net wages rather than gross, this was not specifically mentioned at the conference. Although a more sophisticated plaintiff, or one represented by counsel, could be assumed to have understood what the payment provision meant in terms of an actual sum of money, it is not at all clear that plaintiff understood that he was agreeing to a payment of less than $700.00. Although by that time his claims may have been so whittled down by the prior dismissal order as to justify a very small payment, our concern is with whether the plaintiff, in agreeing to those terms, understood exactly what he was to receive. We cannot confidently say that he did.[3]

---

[3] It also bears mention, as his attorney notes, that plaintiff had at least a theoretical prospect, if he prevailed at trial, of obtaining compensation for mental distress, over and above his lost pay. While a pro se litigant need not be advised as to the full extent of his potential recovery if successful in a lawsuit in order to make a binding settlement, the prospect of a potential additional award reinforces our conclusion that plaintiff cannot be assumed to have understood the limitations of the agreement into which he was entering.

4. The Type of Agreement

The fourth Winston factor is whether the agreement is of a type that is generally committed to writing. To determine whether the agreement is one normally reduced to writing, we are guided initially by N.Y. C.P.L.R. § 2104, which governs whether a writing is required under New York law in these circumstances. See, e.g, Silas v. City of New York, 536 F.Supp.2d 353, 359 (S.D.N.Y. 2008). The provision states:

> An agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered.

N.Y. C.P.L.R. § 2104. In substance this provision requires either (a) a subscribed written agreement, (b) a court order or (c) an agreement between counsel "in open court". In this case, absent a written, signed agreement or a court order, defendant must rely upon the notion that the agreement in question and the manner of its confirmation satisfied the "open court" requirement. A transcribed proceeding is sufficient to meet this test. See, e.g., Alvarez, 146 F.Supp.2d at 337; Monaghan, 875 F.Supp. at 1042; cf. Rivera v. Triple M. Roofing Corp., 116 A.D.2d 561, 562, 497 N.Y.S.2d 416, 417 (2d Dep't 1986); Silas, 536 F.Supp.2d at 359-60. The difficulty in

20

this case, however, is the statutory requirement that such an "open court" agreement be "between counsel".

This phrasing suggests that a pro se litigant cannot be bound by way of an "open court" oral agreement. That interpretation gains force by comparing the statutory wording of the reference to an "open court" stipulation -- which refers solely to "counsel" -- with the balance of the terminology in the same section, which specifies that "an agreement between parties or their attorneys" will not bind "a party unless it is in writing subscribed by him or his attorney or reduced to the form of an order and entered." The variation between these two conjoined sets of phrases appears unambiguously to require that in the case of a pro se litigant, a binding agreement must be memorialized either in a subscribed writing or in a court order. This distinction does not appear arbitrary. Since a pro se litigant may be expected to have less understanding of the significance of an agreement to settle a case -- especially one done orally and without the attendant time, solemnity and potential specificity of a writing -- the legislature may well have decided to require those added formalities in settling a case as a prerequisite to binding the unrepresented party. Cf. 29 U.S.C. § 626(f)(1)(F) (requiring grace period for ADEA plaintiff before signing release to settle case).

This reading, which is supported by at least one court decision in this circuit, see Silas, 536 F.Supp. at 355-56, appears fully consistent with -- indeed, compelled by -- the explicit statutory terms. It is also consistent with the recent observation of the New York Court of Appeals that N.Y. C.P.L.R. § 2104 should be construed strictly in accordance with its literal terms, to ensure that settlement agreements, once properly entered into, can be treated as reliable indicators of the parties' intent and hence rigorously enforced. See Bonnette v. Long Island Coll. Hosp., 3 N.Y.3d 281, 285-86, 785 N.Y.S.2d 738, 740-41 (2004).[4]

In sum, we conclude that the agreement from which the plaintiff

---

[4] The decision in Bonnette appears at least potentially inconsistent with the prior observation by the Second Circuit in Monaghan that "substantial compliance" with N.Y. C.P.L.R. § 2104 is sufficient. See Monaghan, 73 F.3d at 1283 (dictum) (citing Popovic v. New York City Health and Hosp. Corp., 180 A.D.2d 493, 493, 579 N.Y.S.2d 399, 400 (1st Dep't 1992)).

We also note several decisions, both in this district and in two Appellate Division departments, stating or implying that the "open court" exception in section 2104 may apply to a pro se litigant. See Willgerodt, 953 F.Supp. at 560 n.2 (citing Jacobs v. Jacobs, 229 A.D.2d 712, 714, 645 N.Y.S.2d 342, 344 (3d Dep't 1996); Kalomiris v. County of Nassau, 121 A.D.2d 367, 368, 503 N.Y.S.2d 83, 84 (3d Dep't 1986); Kalra v. Kalra, 170 A.D.2d 579, 580, 566 N.Y.S.2d 356, 357 (2d Dep't 1991)). We are not persuaded by the cited decisions. Willgerodt did not address or attempt to analyze the statutory language. Of the three state-court decisions it cited, none discussed the plain wording of the statute; one -- Kalra -- does not even mention section 2104; and the cited comments in the other two are pure dicta and also do not address the statutory language. Finally, all of the decisions predate the Court of Appeals decision in Bonnette, which appears to require a "plain meaning" approach to the statute.

22

wishes to escape would not be enforceable under New York law. Moreover, in this case, given plaintiff's prior litigation history with the Museum and his perhaps tenuous mental stability, one would expect "the parties to go beyond the minimum requirements stated in Ciamarella" and reduce the agreement to writing. Lindner, 2007 WL 1623119 at *9 (emphasis in original).

Putting aside the technical question of whether N.Y. C.P.L.R. § 2104 is binding on us, in view of plaintiff's status as an untutored pro se and his questionable mental state, the lack of specificity at the time of the agreement as to what sum he would receive, and plaintiff's prompt pre-performance disavowal of the agreement, we conclude that the court should not hold him to it.[5]

## CONCLUSION

For the reasons noted, we recommend that defendant's motion to enforce the oral agreement be denied.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall

---

[5] In doing so, we refrain from any reliance on the notion that -- given the tenuous nature and scope of plaintiff's surviving claims -- the settlement was a favorable one for him.

23

be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Jed S. Rakoff, Room 1340, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See Thomas v. Arn, 470 U.S. 140, 150 (1985); Small v. Secretary of Health and Human Services, 892 F.2d 15, 16 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**Dated: New York, New York**
**July 21, 2009**

**MICHAEL H. DOLINGER**
**UNITED STATES MAGISTRATE JUDGE**

24

Copies of the foregoing Report and Recommendation have been mailed today to:

Stewart Lee Karlin, Esq.
9 Murray Street Suite 4W
New York, New York 10007

Allan S. Bloom, Esq.
Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, New York 10022